UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

UNITED STATES OF AMERICA,                                        09-cr-60167-HO

                                    Plaintiff,

                    v.                                           SUPPLEMENTAL ORDER

TYLER FITZSIMMONS,
SHANNON EGELAND,
JEREMY KENDALL,
GARRET TOWNE,
SHAUN LITTLE,
DEL BARBER, JR.,
JEFFREY SPRAGUE,
BARBARA HOTCHKISS, and
KEVIN PALOTAY,

                                    Defendants.
_____

COFFIN, Magistrate Judge:

        The government has charged defendant Jeffrey Sprague with various crimes, including

conspiracy to commit bank fraud.  Sprague served a subpoena on third-party West Coast Bank

requesting production of documents that the Bank had withheld from the government based on

assertion of attorney-client and work product privilege.  The Bank sought to quash the subpoena.

Page 1 - ORDER

After hearing oral argument, requesting additional briefing regarding production of documents Sprague authored and that he had been either sent or copied on and conducting an in camera review of the documents, I ordered production of a report authored by Sprague (Bates number WCB0037333). (# 151).

## Discussion

In order to provide the reviewing court with the most comprehensive view of this issue possible, I supplement my order requiring production. See e.g., U.S. v. Nixon, 418 U.S. 683, 700 (1974) (noting that the Supreme Court's view of the record "necessarily affords a less comprehensive view of the total situation than was available to the trial judge.") The conspiracy to commit bank fraud charge against Sprague is of particular relevance here. The indictment alleges in relevant part that Sprague and his co-defendants:

> Forged and caused borrowers' signatures to be forged, including scanned signatures
> on documents submitted to lending institutions.

(Indictment (#1 at ¶14 D). The document I ordered produced is a report authored by Sprague in June 2007 (the Sprague Report) that identifies irregularities found on loans from Desert Suns Development, including scanned signatures. The Sprague Report was disseminated internally to at least eight officials at the bank. In its objections to my order, the Bank argues that Sprague has not met his burden under Fed. R. Crim. P. 17 and cleared the three hurdles of: " (1) relevancy; (2) admissibility; and (3) specificity." Nixon, 418 U.S. at 700. Because Sprague's attorney had never seen the Sprague Report, he was (and remains) at a disadvantage when forced to argue that a document he has never seen is evidentiary and relevant.

Having reviewed the report in camera, I observe that the Sprague Report establishes that

Sprague identified and reported scanned borrowers' signatures on loans in 2007 as well as other "irregularities" on a number of the loans. As noted above, the 2009 indictment alleges that, starting in January 2003 and continuing through July 2008 (over a year after the Sprague Report was prepared and disseminated), Sprague conspired to commit bank fraud by forging and causing borrowers' signatures to be forged by means including scanning borrowers' signatures as alleged in ¶14 D of the indictment. Facts having a tendency to show the existence of fraud are commonly known as "badges of fraud." U.S. v. Giswold, 8 F.556 (1881); Hudgins v. Kemp, 61 U.S. 45 (1857); see also, In re Woodfield, 978 F.2d 516, 518 (9th Cir. 1992) ("Certain 'badges of fraud' strongly suggest that a transaction's purpose is to defraud...unless some other convincing explanation appears.") Secrecy is a common "badge of fraud." In re Kaiser, 722 F.2d 1574,1582-83. Here, Sprague's identification of scanned borrowers' signatures in the Sprague Report shows an intent to shed light on the scanned signatures, thus indicating that he did not have an intent to hide the forged signatures. A trier of fact could conclude that Sprague would not have reported the signature irregularities if he was part of the fraud. The report, taken in context, permits a rational inference that it relates to the secrecy "badge of fraud" and is therefore relevant to the conspiracy to commit bank fraud offense charged in the indictment.

Further, my in camera review establishes a sufficient preliminary showing that the Sprague Report contains evidence admissible with respect to the conspiracy to commit bank fraud charge. The Bank argues that the Sprague Report could not be admissible regarding Sprague's intent under a hearsay exception, specifically arguing that the report came too long after the conduct alleged. (#153 at p. 9). This is not correct. The indictment alleges that the conspiracy started in January 2003 and continued until July 2008. (#1 at ¶ 13). Thus, the Sprague Report is a contemporaneous

Page 3 - ORDER

statement that may well be admissible under a hearsay exception. Also, as noted above, Sprague's identification of scanned signatures as well as other irregularities[1] in the Sprague Report can be relevant to his defense against the charge that he participated in the fraud. The Sprague Report establishes that when asked to identify irregularities on loans, Sprague, during the time the government alleges the conspiracy was ongoing, identified loans with signatures that appeared to be scanned and other indicia of fraud. Among the recipients of this disclosure were counsel for the Bank, the Bank's loss prevention manager, and the Bank's internal audit and compliance manager. Thus, the Sprague Report appears admissible with regard to Sprague's intent because reporting the scanned signatures is inconsistent with a classic "badge of fraud" i.e. secrecy. Mutual Life Ins. v. Hillmon, 145 U.S. 285, 295-96 (1892) (rejecting the argument that letters were admissible as "memoranda made in the ordinary course of business," but stating that under the state of mind exception, hearsay is admissible if it bears on the state of mind of the declarant and if the state of mind is an issue in the case). In short, the defense is entitled to use the Sprague Report to point out that Sprague was blowing the whistle on the fraud at the same time he was alleged to be part of it.

Moreover, a conspirator may withdraw from a conspiracy by taking affirmative steps, inconsistent with the objects of the conspiracy, to disavow or defeat the conspiratorial objectives, and the break with the other conspirators must be both clean and permanent. U.S. v. Gypsum, 438 U.S. 422, 464-65 (1978); U.S. v. Lothian, 976 F.2d 1257 (9th Cir. 1992). By withdrawing from the conspiracy, the conspirator may avoid liability for subsequent conspiratorial acts. Levine v. U.S., 383 U.S. 265, 266 (1966). The Sprague Report which identified irregularities in loans, including

---

[1] E.g., questionable "verifications of deposits" (VOD). See: Indictment Count I ¶ 14B which alleges that it was part of the conspiracy "to generate bogus...VODs."

Page 4 - ORDER

scanned signatures, may well be relevant to establish that he attempted to withdraw from the conspiracy, even assuming the government produced evidence that he was a co-conspirator at an earlier stage.

I also note that the Sprague Report is not shielded from disclosure under the attorney-client privilege and is, at best, work-product. Typically, an eight-part test determines whether information is covered by the attorney-client privilege: "(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived." United States v. Ruehle, 583 F.3d 600, 607-08 (9th Cir. 2009) (internal citations omitted). The party asserting the privilege bears the burden of proving each essential element.  United States v. Munoz, 233 F.3d 1117, 1128 (9th Cir.2000). Here, Sprague is not a lawyer and the Sprague Report was not generated in response to a request for legal advice. Additionally, the Sprague Report was sent to a wide range of people, not just the Bank's corporate counsel. Finally, the loan records that Sprague references in his report are not themselves protected by the attorney-client privilege and have apparently been produced to the government. The reach of the Bank's claim of privilege is limited to Sprague's findings, not the content of the files on which those findings are based. Thus, the Sprague Report cannot come under the protection of attorney-client privilege.

The work-product doctrine protects from discovery documents prepared by a party and his representative in anticipation of litigation. In re Grand Jury Subpoena, 357 F.3d 900 (9th Cir. 2004). Protected documents may be ordered produced upon an adverse party's demonstration of substantial need for the materials and undue hardship obtaining the substantial equivalent of the materials by

Page 5 - ORDER

other means. Id. For work-product to apply, the documents must be prepared in anticipation of litigation and must be prepared by or for another party or by or for that party's representative. In re California Pub. Utils. Comm'n, 892 F.2d 778, 780-81 (9th Cir.1989) (quoting Fed.R.Civ.P. 26(b)(3)). v. Adlman, 134 F.3d 1194, 1195 (2nd Cir.1988)). Here, the Sprague Report was not authored by a third-party. Instead, it was authored by Sprague himself. If Sprague had decided to send a copy of his report to his home email or to print out a copy for himself, the Bank could not prevent him from using it at trial. Similarly, if Sprague had a photographic memory and could remember every detail of the Sprague Report, the Bank could not bar him from testifying about it in detail. Given this context, it is counterintuitive that the Bank can claim work-product privilege to prevent Sprague from subpoenaing a report that he authored to use in his defense. Finally, I note that if the government had this document, it would be required under Brady[2] to disclose the report to Sprague because it is unquestionably exculpatory.

Accordingly, I supplement my earlier order to provide the court with the most comprehensive view possible of this issue.

DATED this 22 day of November 2011.

THOMAS M. COFFIN
United States Magistrate Judge

---

[2]Brady v. Maryland, 373 U.S. 83 (1963).

Page 6 - ORDER